PEOPLE v. ROACHE.

1. SEARCHES AND SEIZURES — DEMANDING DRIVER'S LICENSE MAY NOT BE USED AS SUBTERFUGE TO SEARCH AUTOMOBILE.

   An officer may. not promiscuously stop automobiles upon the public highway and demand the driver's license merely as a subterfuge to invade the traveler's constitutional right to be secure against unreasonable search and seizure, and then search the automobile for intoxicating liquors.

2. SAME—OFFICER MAY NOT SEARCH AUTOMOBILE ON UNGROUNDED SUSPICION.

   Where an officer had no information whatever concerning an automobile or its occupants, but became suspicious that the law was being violated because the occupants kept looking back at him after he had passed them on a public highway, he had no reasonable ground for suspicion justifying his search of the automobile without a warrant.

3. EVIDENCE—COURT WILL TAKE JUDICIAL NOTICE THAT LAW-ABIDING CITIZENS AS WELL AS LAW VIOLATORS USE AUTOMOBILES.

   While the court will take judicial notice of the fact that rum runners and bandits ride in automobiles and use them to commit crimes and effect their escape, it will also

[1]Intoxicating Liquors, 33 C. J. § 376; Searches and Seizures, 35 Cyc. p. 1266 (Anno); [2]Id., 35 Cyc. p. 1266 (Anno); [3]Evidence, 23 C. J. § 1810.

take judicial notice of the fact that where there is one bandit or rum runner passing over a public highway, there are thousands of respectable, law-abiding citizens who are doing likewise, whose right to be secure against unreasonable search and seizure should be protected.

4. CRIMINAL LAW—INTOXICATING LIQUORS—SUPPRESSION OF EVIDENCE OBTAINED BY ILLEGAL SEARCH.

In a prosecution for illegal possession and transportation of intoxicating liquors, where the only evidence against defendant was obtained by illegal search and seizure, said evidence should have been suppressed, on motion seasonably made, and defendant discharged.

SHARPE, C. J., and STEERE and CLARK, JJ., dissenting.

Exceptions before judgment from Genesee; Black (Edward D.), J.    Submitted January 27, 1926. (Docket No. 176.)    Decided January 3, 1927.

Merwin Roache was convicted of violating the liquor law.   Reversed, and defendant discharged.

*Thomas A. Lawler* and *John F. Berry,* for appellant.

*Andrew B. Dougherty,* Attorney General, and *William R. Roberts,* Prosecuting Attorney, for the people.

CLARK, J. (*dissenting*).    Defendant was convicted of possessing and transporting intoxicating liquor. His exceptions present the question that the evidence against him was obtained by unlawful search and seizure, made without warrant.    His automobile, coupe body, in which he rode, was being driven by one Powers on an improved highway, in the daytime, at a speed of 18 to 20 miles per hour.    A motorcycle officer, who had served five years as such, in uniform, met and observed them in passing, turned and followed for some time, and overtook and stopped them.

He testified:

"*Q.* State whether or not you stopped that automobile at that time and place.

---

4Criminal Law, 16 C. J. § 1110.

"*A.* I did.

"*Q.* How did you come to do so?

"*A.* I was driving south on a motorcycle, passed this car, noticed the two boys in it. As I went by the car they kept watching me so I turned around and came back, stopped the car, questioned them as to whether they had a driver's license. Pat Powers, he didn't have one.

"*Q.* Who was driving the car at that time?

"*A.* Pat Powers. And Mr. Roache claimed the car. So I asked him to unlock the back deck. As he was doing it I asked him what he had in the car. He told me five cases of beer. So I told him never mind unlocking the deck, so I got in the car, was 12 quarts of gin in a paste-board carton with an overcoat over it. So I had the two boys get back in the car, I drove them to Flint. * * *

"*Q.* Why did you stop this car?

"*A.* I stopped the car because the men were watching me. I suspected them.

"*Q.* What?

"*A.* I suspected the men because they looked suspicious to me; they were watching me as I passed, as I went on the road on the motorcycle. * * *

"*Q.* You say you stopped them because they looked suspicious. What was there about them that looked suspicious?

"*A.* As I went by they were driving slower than an ordinary person, a person on the highway. As I went on down the road I kept turning around, looking around, these lads were turning around, watching me at the same time. As I was in uniform it aroused my suspicion.

"*Q.* You have driven a motorcycle as an officer how long?

"*A.* Nearly five years, five years of motorcycle season.

"*Q.* When you say they looked suspicious, you base that upon your experience as a motorcycle officer driving cars? * * *

"*A.* Yes, sir. * * *

"*Q.* They were not violating any speed regulations?

"*A.* No, sir.

"*Q.* They gave no evidence of being intoxicated, either one of them?

"*A.* No, sir.

"*Q.* You saw no evidence of any liquor anywhere?

"*A.* No, sir.

"*Q.* So that was the only reason why you stopped them because you were suspicious of them?

"*A.* Absolutely.

"*Q.* That is the sole and only reason for your act?

"*A.* Yes, sir."

To support a motion to quash, to suppress, and to discharge, Roache and Powers made affidavits and also testified contradicting the officer in some particulars respecting what happened after he stopped the car. The motion was denied, unqualifiedly, by formal order before trial. When the people's first witness was sworn at the trial, defendant, as an objection to evidence, urged again the substance of the motion, and it was overruled.

The evidence establishes defendant's guilt beyond dispute. The bulk of the testimony taken at the trial relates, not to the question to be tried, namely, defendant's guilt or innocence of the crime charged, but to the collateral question of whether the evidence against him had been procured lawfully. The trial judge, in addition to submitting the question, which it was the province of the jury to determine, also undertook to submit the collateral question, which he had previously determined. Defendant was entitled to a trial by jury of the offense charged against him. He was not entitled to have the jury pass on the collateral question. That was for the court to determine on a motion presenting it before trial. *People* v. *Marxhausen*, 204 Mich. 559 (3 A. L. R. 1505). And that is true although the facts shown upon the hearing of the motion were in dispute. We have held that it is not reversible error for the court to submit, on disputed facts, the collateral issue to the jury. *People* v. *Cardella*, 233 Mich. 505. But the court should not pause and suffer delay in a jury trial in determining

the collateral question.    What the judge said in his charge relative to the collateral matter is important only with respect to the question before the jury—the guilt or innocence of the accused.    But that is here without substance, for the evidence of guilt being undisputed, the judge might have instructed the jury that it was their duty to bring in a verdict of guilty, subject, of course, to the limitations set forth in *People v. Heikkala*, 226 Mich. 332.

This brings us to the main question in the case, Did the court err in denying the motion to quash, suppress and discharge?    Section 4 of Act No. 186, Pub. Acts 1923, amending a former act relative to licensing of operators of motor vehicles, provides for issuing a license card or tag to each licensee and requires:

"Said license card or tag shall at all times be carried by the licensee when he or she is operating a motor vehicle along the public highways of this State and shall be given up by him or her for examination upon demand by any proper officer."

Whether an officer may stop, indiscriminately, travelers on the highway and demand of them that they produce license cards is a question we do not and need not determine, for if it be granted that the officer has that power, it makes no difference here.    Such statute does not provide ways or means of invading the constitutional right here claimed by defendant, the right to be secure against unreasonable search and seizure.    When the officer directed the defendant to unlock the back deck of the car, his search was then on.    What happened afterward was merely a continuation of it.    The quoted statement of defendant as to the beer was made under duress of search and by reason of it.

When the officer directed that the car be unlocked, he was then to be governed by the following rule:

"If an officer, charged with the enforcement of the

law, from the exercise of his own senses, or acting upon information received from sources apparently so reliable that a prudent and careful person, having due regard for the rights of others, would act thereon, has reasonable and probable cause to believe that intoxicating liquor is being unlawfully transported in an automobile in his presence, he may arrest the offender or search for and, if found, seize the contraband therein without a warrant to do so." *People* v. *Kamhout*, 227 Mich. 172, 188.

It is not claimed that the officer had any information, respecting defendant, other than that gained by the use of his senses at the time. The court might, and it seems did, resolve the disputed question of fact as between the officer and this defendant and his companion in favor of the officer, and the court held, in effect, that the officer's testimony disclosed reasonable ground to believe that the defendant was transporting intoxicating liquor, and that therefore the search of the car was not unreasonable, not unlawful.

The automobile has come to be the convenient instrument of bandits and rum runners. So used, it presents a most difficult problem to officers in their efforts to solve crime. If the rules relative to search and seizure, as applied to the home, be applied with like rigor to the automobile in public places, the automobile bandit and the rum runner are practically immune. That there is a necessary difference between the search of a home and the search of an automobile is recognized. *Cardella Case, supra.* Under most liberal rules as to probable cause to search, the officer's problem remains difficult. We are dealing with a condition, a prevalence of crime, menacing to and destructive of the social order. We are not confronted with theory in the abstract. The well known constitutional provision does not denounce "all searches and seizures, but only such as are unreasonable." *Carroll* v. *United States*, 267 U. S. 132 (45 Sp. Ct.

280, 39 A. L. R. 790) ; *People* v. *Case,* 220 Mich. 379 (27 A. L. R. 686).

Whether the search in question was reasonable is to be determined in view of the facts and conditions before us.    The officer was patrolling the Dixie highway, a main artery from Detroit into the State.    It was his duty to stop and seize liquor-carrying automobiles.    As was said in the *Carroll Case,* "Detroit and its neighborhood along the Detroit river, which is the international boundary, is one of the most active centers for introducing illegally into this country spirituous liquors for distribution into the interior." Defendant and his companion were driving on this main highway away from Detroit.    They were going slowly, having a well-loaded car.    The officer might and did infer from their actions, their conduct, their watchfulness, that they were nervous and apprehensive because of his presence.    There was no apparent cause for their behavior.    Might not the officer infer that the cause was concealed?    All this, to the officer, was impressive and significant, peculiarly so in view of his long experience in patrol duty.    The record shows that, calmly confident of results, he stopped the car. The officer may not stop and search automobiles indiscriminately.    He acts at his peril.    If he is wrong in this liquor case, he would be equally wrong had he found in the car the spoils of a bank robbery.    The showing is meager, but we decline to say that the circuit judge erred in holding that the officer had probable cause to search without warrant.    *United States* v. *Stafford,* 296 Fed. 702; *Park* v. *United States,* 294 Fed. 776; *People* v. *Kamhout, supra; People* v. *Case, supra.*

The conviction should be affirmed and judgment advised.

SHARPE, C. J., and STEERE, J., concurred with CLARK, J.

SNOW, J.   In searching the defendant's automobile without a warrant the officer exceeded his authority and invaded a constitutional right of the defendant. The evidence against him was obtained by an unlawful search and seizure, and the motion to suppress, timely and properly made, should have been granted. To permit the searching of automobiles by one invested with official authority, under such circumstances as obtain in the instant case, can mean but one thing, the right to indiscriminately stop any one driving along the public highway and subject him to the ignominy of a search of his personal and private effects at the mere caprice of such officer.   Such right does not exist and cannot be conferred.   According to the quoted testimony of the officer in the opinion of Mr. Justice CLARK, the most that can possibly be claimed for it, as giving him reasonable and probable cause to believe that the defendant was unlawfully transporting intoxicating liquor, is that the occupants of the car looked back at him after they had passed, and that the driver was going slower than the majority of cars driven along this highway.   This made the officer suspicious.

No one will contend that an officer may promiscuously stop automobiles upon the public highway and demand the driver's license merely as a subterfuge to invade the constitutional right of the traveler to be secure against unreasonable search and seizure.   Yet that is exactly what was done here.   The officer cared nothing about seeing a driver's license, but he says he was suspicious that there was liquor in the car, and almost immediately after stopping the defendant he ordered him out of his car and proceeded to search it for liquor.

For the disposition of this case the rule laid down by Mr. Justice SHARPE in the majority opinion of the court in *People* v. *Kamhout*, 227 Mich. 172, may be accepted, and, when applied to the facts here, makes

it clear that the search was illegal.     The rule, page 187 of said case:

"There must be no misunderstanding on the part of the officers as to the right of search and arrest under our holdings.     They have no right to stop and search an automobile for the purpose of ascertaining whether it is being used as a means of transporting liquor illegally unless they have such reasonable grounds of suspicion as induce in them, *and as would induce in any prudent man,* an honest belief that the law is being violated.     *     *     *     The fact that intoxicating liquor is found as a result of the search cannot be said, in itself, to justify the search, while it may be urged in support of the good faith of the officer in making it. What we do state to be the rule by which this court will be governed is, that if an officer, charged with the enforcement of the law, from the exercise of his own senses, or acting upon information received from sources apparently so reliable *that a prudent and careful person, having due regard for the rights of others,* would act thereon, has reasonable and probable cause to believe that intoxicating liquor is being unlawfully transported in his presence, he may arrest the offender or search for and, if found, seize the contraband therein without a warrant to do so."

What was there in the situation in the instant case that would lead "a prudent and careful person, having due regard for the rights of others" to have reasonable and probable cause to believe that liquor was being unlawfully transported in defendant's automobile? The officer had no information whatever from any source concerning this automobile or its occupants, and he saw no liquor or anything indicating the presence of liquor.     The automobile was proceeding slowly, 17 miles per hour.     What significance could this possibly have?     Surely one has the right to drive at this rate of speed without being interfered with by a traffic policeman.     The occupants looked back at the officer.     We ask, May one not look at a policeman on a motorcycle?     Can such ordinary happenings as these, or the combination of the two, sustain an of-

ficer's claim that he had probable cause to believe the automobile contained liquor? The answer is obvious. No other cause for suspicion was advanced by the officer. If such usual and trivial things are held to give the right to search an automobile on the public highway without a warrant, no officer will ever be at a loss to find some excuse for his misconduct. He could surely as well claim he became suspicious from the fact it was going slow; he could claim that its occupants were well dressed, or that they were poorly dressed; that they were bold and impudent, or that they were modest and respectful; that they stared at him, or that they avoided looking in his direction; that their car was muddy or that it was too highly polished; or any other of a thousand ordinary and immaterial things that might be mentioned. Suppose this officer had gone before a magistrate and made affidavit that he had met two boys in an automobile driving slowly, and that after he passed they turned and looked at him, and had, on this showing, asked for a search warrant, could it be for a moment considered that such an affidavit was a showing of cause? It would have been an abuse of discretion to issue a search warrant based on such a showing. Yet, upon the same showing here, we are asked to hold that without a warrant the search was justified and the seizure lawful.

It is said that the officer acted "at his peril" in searching this automobile. If, then, he had found nothing, it is certain that a defense of reasonable cause in a civil suit against him, under his testimony, would have been unavailing. And it is equally certain that in a criminal case, notwithstanding the fact that liquor was found, his means of search cannot be justified, nor the seizure held lawful.

While we may take judicial notice of the fact that rum runners and bandits ride in automobiles, and use them to commit crimes and effect their escape, may

we not also take judicial notice of the fact that where there is one bandit or rum runner passing over a public highway, there are thousands of respectable, law-abiding citizens who are doing likewise? The protection afforded by the Constitution to such persons must be regarded as paramount to any right to be given a police officer to enable him to verify his ungrounded suspicion that a law is being violated.

The granting, if such a thing were possible, to over-zealous officers, of powers, the performance of which would invade constitutional rights of the citizen, would do more to retard the enforcement of law than to promote it. The motion to suppress should have been granted.

The verdict is reversed, and as a conviction cannot be secured without the liquor as evidence, the defendant is discharged.

BIRD, FELLOWS, WIEST, and McDONALD, JJ., concurred with SNOW, J.