84 N.J. Super. 427 (1964)
202 A.2d 448
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN JOSEPH SCANLON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 15, 1964.
Decided July 6, 1964.
*430 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Richard J. Murray, assigned counsel, argued the cause for appellant.
Mr. Raymond R. Trombadore, Assistant County Prosecutor, argued the cause for the State (Mr. Arthur S. Meredith, County Prosecutor, attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant John Joseph Scanlon was indicted along with James Francis Hampson for the crimes of breaking and entering the premises of Tellepsen Construction Company, in the township of Branchburg, on December 28, 1962, and for larceny of a steel safe therefrom containing money and postage stamps, with a total value of $1,487.75, contrary to N.J.S. 2A:94-1 and N.J.S. 2A:119-2. Scanlon and Hampson were tried together and found guilty by a jury in the Somerset County Court. Defendant Scanlon appeals, urging as grounds for reversal: (1) the evidence used to obtain his conviction was the result of an illegal arrest and/or search; (2) he was denied due process of law, and (3) the trial court erred in its charge to the jury.
At about 6:30 A.M. on December 28, 1962, and while it was still dark, Gerald Reynolds, an officer of the Delaware *431 State Police, while patrolling northerly on U.S. Route 113 just south of Ellendale, Delaware, observed a 1958 Chevrolet station wagon proceeding southerly on the highway. He noted that the right taillight lens on the vehicle was broken. He turned his patrol car around, caught up with the vehicle and signaled it to a stop on the side of the road. The police officer then halted his patrol car about ten feet to the rear of the station wagon.
The station wagon was operated by James Hampson. It was owned by defendant Scanlon, who was riding as a passenger in the front seat. After the station wagon stopped, both occupants left the vehicle and conferred with the state trooper on the shoulder of the highway. Hampson was unable to produce his driver's license when the officer requested it, stating that he did not have it with him. Defendant produced the automobile registration and his driver's license, which the officer examined. The trooper then informed Hampson he was under arrest for driving without a license. He also informed Scanlon and Hampson that the right rear taillight was defective.
Officer Reynolds then walked to the left side of the station wagon, the door of which was open, and glanced inside. He observed clothing and blankets in the rear thereof and noticed that a blanket was covering a square object. He asked both men what it was, and defendant Scanlon stated it was a tool box and that they were going to his brother's cottage in Berlin, Maryland. Reynolds alleges that he then said, "It wouldn't be a safe would it?" to which Scanlon replied, "Well, what would I be doing with a safe?" The officer reached inside the car and tapped the blanket covering the object. He testified that there was a hard object underneath and there was no hollow sound  it "didn't sound like a tool box."
The state trooper directed Hampson to ride with him to the magistrate's office and told Scanlon to follow with the and he then walked back to the station wagon, which was station wagon. This was done. At the magistrate's office in Ellendale Reynolds told Hampson to stay in the patrol car *432 parked immediately behind the patrol car and alongside the curb outside the office. He told Scanlon he "would like to search his vehicle." Defendant got out of the station wagon and "never said anything." The officer reached inside and lifted the blanket from the object it covered. He found that it was a safe with a rifle underneath it. The state trooper said to defendant, "I thought you told me this was a tool box." Scanlon allegedly replied, "I knew you wouldn't believe me if I told you it was a safe." Reynolds asked defendant to open it. Defendant said he did not know the combination.
Both defendant and Hampson were taken into the magistrate's office where the officer signed a complaint charging Hampson with driving without a driver's license in his possession in violation of the Delaware motor vehicle laws, and also issued to Hampson a written "warning slip" for operating the motor vehicle with a defective taillight. Reynolds questioned defendant further about the safe and Scanlon said it was his brother's. He was told to telephone his brother to ascertain the combination. He replied that he didn't know how to contact him. Thereafter defendant changed his story and informed the officer that he and Hampson had found the safe in the woods near a restaurant in the vicinity of Aberdeen, Maryland.
Trooper Reynolds notified his station of the incident and Lieutenant Ralph Richardson, Jr. was sent to the magistrate's office to investigate. While Richardson was en route, Hampson entered a plea of guilty to the motor vehicle charge lodged against him and the magistrate imposed a fine of $10. Upon Richardson's arrival, the rifle was removed from the station wagon. A charge of carrying a concealed weapon was made against defendants Scanlon and Hampson. The safe was taken to police headquarters where later it was learned that it had been stolen from the Tellepsen Construction Company in Branchburg, New Jersey.
The charge against defendant of carrying a concealed weapon in Delaware was subsequently dropped. Scanlon and *433 Hampson were indicted and convicted of the offenses in this State, from which convictions defendant Scanlon now appeals.

I.
The main thrust of Scanlon's appeal is directed to the contention that there was an unlawful arrest, search and seizure, and that the evidence seized was used at his trial to bring about his conviction. Motions to suppress such evidence were made by both defendant Scanlon and codefendant Hampson prior to and during the course of the trial. In each instance the trial court denied the motions on the ground that the search of the motor vehicle and seizure of the safe were lawful because they were incidental to a lawful arrest.
Defendant Scanlon contends the search and seizure were unreasonable and contrary to the provisions of the Fourth Amendment. He alleges that no valid arrest occurred and hence the search of his motor vehicle was unlawful. He further argues that the search and seizure were not supported by probable cause for the officer to believe that a crime had been committed and therefore it was unreasonable and in violation of his constitutional rights. The position of the State is to the contrary.
We digress for the moment to state that our review of the record of the trial below compels but one conclusion  defendant Scanlon and codefendant Hampson were guilty of the crimes charged. They were literally "caught with the goods"  the safe which earlier had been stolen from Tellepsen Construction Company was in their possession when by sheer accident they fell into the hands of the law. Defendant Scanlon admitted his participation in the crime to police officers and did not testify in his own defense at the trial. However, following the landmark decision of the United States Supreme Court in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), holding that all evidence obtained by searches and seizures in violation of the Fourth Amendment is inadmissible in state courts, it has become our responsibility *434 to enforce this exclusionary rule. It is in this light that we approach and must deal with the issues raised by defendant Scanlon on this appeal.
Since the search of defendant's station wagon was made without a search warrant's having been obtained, the first issue for determination is whether it was a lawful search made incidental to a lawful arrest. It is well settled that when a person is lawfully arrested, the police have a right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. Such right to search and seize without a search warrant extends to things under the accused's immediate control and, to an extent, depending on the circumstances of the case, to the place where he is arrested. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed. 777, 780 (1964). See also Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).
In the instant case it is conceded that officer Reynolds stopped defendant's station wagon on the highway because it had a broken taillight and arrested the codefendant Hampson only because of his failure to have a driver's license in his possession. An arrest for such a violation of the motor vehicle laws, without more, is not sufficient cause for a search of the motor vehicle. United States v. Tate, 209 F. Supp. 762 (D.C. Del. 1962); People v. Mayo, 19 Ill.2d 136, 166 N.E.2d 440 (Sup. Ct. 1960); People v. Zeigler, 358 Mich. 355, 100 N.W.2d 456 (Sup. Ct. 1960); People v. Roache, 237 Mich. 215, 211 N.W. 742 (Sup. Ct. 1927); cf. People v. Watkins, 19 Ill.2d 11, 166 N.E.2d 433 (Sup. Ct. 1960); People v. Sanson, 156 Cal. App.2d 250, 319 P.2d 422 (D. Ct. App. 1957). A search incident to an arrest is authorized *435 when it is reasonably necessary to protect the arresting officer from an assault, to prevent the prisoner from escaping, or to prevent the destruction of evidence of the crime  things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. Preston v. United States, supra.
However, the motor vehicle violations on the part of Hampson in the present case are not such offenses, in themselves, which raise the kind of inferences which justify searches in other cases. Surely the operator of a motor vehicle should not be required to submit to a search of his person or his automobile, merely because he parks too close to a fire hydrant, fails to stop at a stop sign, passes a red light, exceeds the speed limit, or commits like traffic violations.
We consider next the status of defendant Scanlon. After the state trooper arrested Hampson for violation of the motor vehicle laws and ordered him to ride in the police car to the magistrate's office, the officer told Scanlon to follow with the station wagon. No charges had been made against Scanlon and he was not under arrest. Following the search of the station wagon outside the magistrate's office and discovery of the safe and rifle concealed therein, Scanlon was held in custody under the Delaware "two-hour detaining law." This statute authorizes a police officer to detain a person, who he has reasonable grounds to suspect has committed a crime, for a period of two hours, at the conclusion of which the suspect must be arrested or released. It specifically provides that the detention is not an arrest. See 11 Del. Code § 1902.
It was not until Lieutenant Richardson arrived sometime later at the magistrate's office and had examined the safe and rifle, which were still in the station wagon, that a charge was made against Scanlon. Both he and Hampson were then placed under arrest for carrying a concealed weapon. Thus, it is clear that when the search of the station wagon and the seizure of the safe were made by Officer Reynolds, defendant was not under arrest. Accordingly, the search and seizure were not made as an incident of the arrest of defendant.
*436 However, the State contends that if the seizure of the safe was not incidental to an arrest, the search and seizure were based upon reasonable cause for the officer to believe that a crime had been committed, and therefore he had a right to make the search and seizure without obtaining a search warrant.
Our review of the record compels the conclusion that the officer did not have reasonable grounds to believe that a crime had been committed. When he looked inside the vehicle on the highway he could see the outline of a square object covered by a blanket. Even after he reached inside and tapped it, he did not feel the need of making a further observation. There was nothing unusual in the behavior of Scanlon and Hampson. Like many people who are stopped on the highway by a traffic officer, the defendants alighted from their vehicle to confer with the officer and to produce registration and driver's licenses. Nor was it significant that the officer allegedly asked Scanlon whether the covered object was a safe. No theft had been reported. It was pure speculation on his part and of such minimal degree that he did not deem it necessary to remove the blanket.
The most that can be mustered upon which to bottom the trooper's later search of defendant's automobile is his suspicion and curiosity as to the covered object. Cf. State v. Valentin, 74 N.J. Super. 502 (Law Div. 1962). However, suspicion does not rise to the level of probable cause and is an insufficient ground on which to base search and seizure without a warrant. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, 450 (1963); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, 1891 (1949); State v. Macri, 39 N.J. 250, 257 (1963); State v. Parsons, 83 N.J. Super. 430, 444 (App. Div. 1964).
That the officer's suspicions were subsequently confirmed by the results of his search is clearly not sufficient to save an otherwise illegal search. Wong Sun v. United States, *437 supra, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d, at p. 453; Henry v. United States, supra, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d, at p. 139; State v. Parsons, supra, 83 N.J. Super., at p. 444.
We do not have here a disclosure of contraband by mere visual inspection, as in State v. Brooks, 102 U.S. App. D.C. 383, 57 Wash.2d 422, 357 P.2d 735 (Sup. Ct. 1960), and Bell v. United States, 254 F.2d 82 (D.C. Cir. 1958). Nor do we have furtive movements in connection with suspicious objects. People v. Sanson, supra. The object of the suspicion did not appear to be anything patently criminal, as in People v. Jordan, 37 Misc.2d 33, 234 N.Y.S.2d 323 (Cty. Ct. 1963), where an officer saw what appeared to be a gun butt in an automobile and removed it. (Yet in the Jordan case the court held the search illegal.)
There was ample time and opportunity for Officer Reynolds to apply for a search warrant. Defendant's station wagon was parked outside the magistrate's office. Hampson was under arrest for the motor vehicle violation, and defendant, while not under arrest, was subject to detention under the Delaware two-hour detaining law at the will of Officer Reynolds. (It is to be noted that the Delaware statute does not authorize a search or seizure. And see Commonwealth v. Lehan, Mass., 196 N.E.2d 840 (Sup. Jud. Ct. 1964), where it was held under a similar statute that such a "threshold inquiry" by police does not include the right to search in the absence of probable cause for arrest.) If the officer had probable cause to search defendant's motor vehicle, he could readily have obtained one from the magistrate. If he did not have probable cause, then he had no right to search.
The search of defendant's station wagon by the police officer, without warrant, was in violation of defendant's rights under the Fourth Amendment, and the evidence discovered thereby, despite its obvious incriminating character, should have been suppressed. Denial of the motions to suppress by the trial court was error.

*438 II.
Defendant's next argument is that he was denied due process of law. He alleges that during the period following his apprehension on the highway by Officer Reynolds and until he was returned to New Jersey (after having waived extradition), he was not advised by police (1) of his right to counsel, (2) that anything he might say could be used against him in subsequent criminal proceedings, or (3) that any statements he made must be voluntary, without threats of force, or promises.
We have reviewed the transcript of the proceedings below. Defendant did not testify on his own behalf and the record is barren of any indication that defendant sought or was denied the advice of counsel. Following his indictment an attorney was assigned to represent him at the trial, and upon conviction his present counsel was assigned for this appeal. The circumstances here are readily distinguishable from those which are found in Escobedo v. Illinois, 84 S.Ct. 1758, decided by the United States Supreme Court on June 22, 1964.
As to the ground that defendant was not advised of his right to remain silent or warned that any statement he made might be used against him, our courts have uniformly held that such cautionary instructions are not an essential step in the establishment of the fact that an admission of guilt is voluntary. State v. Pierce, 4 N.J. 252, 261 (1950); State v. Cooper, 10 N.J. 532, 552 (1952); State v. Fauntleroy, 36 N.J. 379, 392 (1962); State v. Reynolds, 41 N.J. 163, 180 (1963).
During the course of the trial and prior to testimony of oral admissions made by defendant (he would give no written statement), the court conducted an inquiry in the absence of the jury directed to the voluntary nature of such admissions. The trial court found the same admissible. After such testimony was presented to the jury, the trial court properly submitted the issue of voluntariness to the jury for its determination. Neither during the preliminary inquiry, nor during *439 the trial in the presence of the jury, did defendant testify or call witnesses to support a contention that his oral admissions were involuntary.
We find no merit to defendant's contentions on this ground.

III.
Defendant's final point is that the court erred in its charge to the jury. After having instructed the jury that the State must bear the burden of establishing the guilt of defendant by proof beyond a reasonable doubt, the trial judge thereafter stated:
"Now, if after you reach a conclusion beyond a reasonable doubt, as I have defined it, that the defendants are guilty of breaking and entering with intent to steal, and of larceny of the safe and the money in the safe, you will find the defendants guilty as charged. However, if after a consideration of all the evidence you reach the conclusion beyond a reasonable doubt, as I have defined it to you, that the defendants are not guilty of the breaking and entering and larceny as charged in the indictment, your verdict will then be in favor of the defendants and will find these defendants not guilty as charged." (Emphasis added)
It is obvious that the foregoing instruction was incorrect. The State has the burden throughout the prosecution of a criminal case to prove the guilt of the defendant beyond a reasonable doubt. The above italicized language of the charge, we believe, placed upon defendant the burden of showing beyond a reasonable doubt that he was not guilty. While elsewhere in the charge the trial judge had laid down the correct rule for the benefit of the jury, an erroneous instruction is not cured by the existence of the correct instruction elsewhere in the charge unless the incorrect one is withdrawn. See State v. Vliet, 120 N.J.L. 23, 25 (Sup. Ct. 1938).

IV.
We believe it not only appropriate but necessary to include in our opinion matters which have been brought to *440 our attention during the pendency of this appeal. Both prior to filing of defendant's brief and subsequent to oral argument, defendant has unjustly criticized counsel assigned by this court to represent him on the appeal. He has charged counsel with negligence and his most recent letter to counsel was scurrilous.
Unfortunately, such assertions have become commonplace in prisoner appeals. Assigned counsel, as members of the bar of this State and as officers of the court, have readily accepted their responsibility to give of their time and services, without compensation, in order that the rights of indigent defendants will be fully protected. The reward for their services is only the personal satisfaction that they have lived up to the highest traditions of their profession.
It has been our experience that assigned counsel labor arduously and competently on behalf of their clients. They merit not condemnation, but praise.
Defendant's complaints in the instant case are totally without merit. We deplore and condemn them. State v. Wolak, 26 N.J. 464, 483 (1958). We commend assigned counsel for the excellent service he has rendered on behalf of an ungrateful client.
For the reasons hereinbefore set forth the judgment of conviction is reversed and the cause is remanded for a new trial.