74 N.J. Super. 502 (1962)
181 A.2d 551
STATE OF NEW JERSEY, PLAINTIFF,
v.
OSCAR ORTIZ VALENTIN, DEFENDANT.
Superior Court of New Jersey, Law Division  Criminal.
Argued February 9, 1962.
Decided May 22, 1962.
*503 Mr. William A. O'Brien, Assistant Prosecutor, argued the cause for the plaintiff (Mr. Lawrence A. Whipple, Hudson County Prosecutor, attorney).
Mr. Francis A. Bock argued the cause for defendant.
ROSEN, J.C.C. (temporarily assigned).
Defendant, Oscar Valentin, was indicted on a charge of carrying a shotgun concealed in his automobile, without having obtained a permit to do so, in violation of N.J.S. 2A:151-41.
Prior to trial, Valentin moved in the County Court to suppress the evidence (the shotgun) on the ground that it was taken from his automobile by the police officers in *504 the Town of Harrison without a search warrant, and as the result of an unreasonable search and seizure, in violation of the Fourth Amendment of the United States Constitution and of Article I, paragraph 7, of the New Jersey Constitution.
As a result of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), our Supreme Court stated that it could not determine on the record before it whether the search and seizure were unreasonable, and remanded the matter to the County Court to permit the parties to introduce all relevant proof on the new issue generated by Mapp. 36 N.J. 41 (1961). This court granted the State and the defendant an opportunity to produce additional facts surrounding the particular search and seizure, but was informed that both parties relied upon the partial transcript of testimony given by the police officers in the United States District Court in a criminal proceeding and arising out of possession of the same shotgun at the time in question.
A reading of this transcript discloses that on March 19, 1960, at or about 1:45 A.M., in the Town of Harrison, County of Hudson, the defendant stopped at a tavern located on the roadway which is the main artery for traffic from Newark to New York. The defendant parked his car next to the curb, walked across the street and entered a tavern which closes at 2:00 A.M. Two Harrison police officers, having seen the defendant go into the tavern and not recognizing him, approached the parked vehicle. While one of the police officers watched the defendant through the tavern window, the other officer searched the defendant's vehicle and allegedly found a disassembled shotgun and 12 shotgun shells under the driver's seat. The defendant was thereupon arrested as he left the tavern. The shotgun was used as evidence by the State in obtaining an indictment against the defendant on the charge of carrying a concealed weapon. The police officers never questioned the defendant prior to the search or subsequent to the arrest *505 even though the defendant was at all times within their view and only a few feet away from them.
One of the police officers testified that his "suspicions" were aroused by defendant's actions and that "he just checked it out and it was fruitful." Defendant, when observed by this police officer, was walking "in a sober manner." The car in which defendant was riding had New Jersey license plates and it appears the reason for the officer's investigation was due to the fact that they had never seen the car or the defendant in the Town of Harrison at any other time.
Defendant was tried in the United States District Court, District of New Jersey, on June 28, 1960, for violation of the National Firearms Act, said violation arising out of the same set of facts as above stated. At that trial, the court held that the evidence seized (the shotgun) was improperly obtained, in violation of defendant's constitutional rights under the Fourth Amendment of the United States Constitution, suppressed the evidence, and acquitted the defendant.
In Mapp the United States Supreme Court held that the interrelationship of the Fourth Amendment and the due process clause of the Fourteenth Amendment of the United States Constitution guaranteeing to individuals the right of privacy free from unreasonable state intrusion renders evidence obtained by unreasonable search and seizure inadmissible in a state criminal prosecution based thereon.
It is uncontradicted that the police officers had no search warrant and that the search was made prior to defendant's arrest. As stated by the court in State v. Valentin, above, 36 N.J., at page 44, "Was the search unreasonable under the circumstances?"
It is the command of the Fourth Amendment that no warrants for either searches or arrest shall issue except "upon probable cause, supported by Oath or affirmation * * *." The requirement of probable cause has roots that are deep in our history. In Henry v. United States, 361 *506 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), Mr. Justice Douglas reviewed the philosophy of this principle which was later reflected in the Fourth Amendment. At page 101, 80 S.Ct., at page 170, the court said:
"And as the early American decisions both before and immediately after its [the Fourth Amendment] adoption show, common rumor or report, suspicion, or even `strong reason to suspect' was not adequate to support a warrant for arrest. And that principle has survived to this day. See United States v. Di Re, 332 U.S. 581, 593-595, 68 S.Ct. 222, 92 L.Ed. 210; Johnson v. United States, 333 U.S. 10, 13-15, 68 S.Ct. 367, 92 L.Ed. 436; Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503. Its high water was Johnson v. United States, supra, where the smell of opium coming from a closed room was not enough to support an arrest and search without a warrant. It was against this background that two scholars recently wrote, `Arrest on mere suspicion collides violently with the basic human right of liberty.'"
The probable cause which is necessary to validate a search or arrest without a warrant has been described as "a belief, reasonably arising out of circumstances known to the * * * officer" that a crime has been committed. Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925). More recently, the court stated the rule to be "a reasonable ground for belief of guilt," and this determination should be made on the basis of what "reasonable and prudent men, not legal technicians" would think from the facts presented at the time. Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). See, also, Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).
The law of search and seizure in automobiles is not different from such law governing search of the person or fixed premises. The problem in searches of motor vehicles is the area between suspicion and probable cause. The citizen who has given no cause for belief that he has committed or is engaging in the commission of crime is entitled to proceed on his way without interference. While law enforcement authorities have the duty to make investigation *507 under suspicious circumstances, there is no right to search unless there is probable cause to arrest. Probable cause must exist before the arrest and must not depend upon what the search reveals. Although in view of the great mobility of automobiles the concept of reasonability is somewhat extended in such cases, Brinegar v. United States, above; Carroll v. United States, above, the United States Supreme Court has not as yet held that the requirements of probable cause are less stringent for an incidental search of an automobile than a private residence. As stated in Henry v. United States, above, 361 U.S., at page 104, 80 S.Ct., at page 172:
"* * * Carroll v. United States, supra liberalized the rule governing searches when a moving vehicle is involved. But that decision merely relaxed the requirements for a warrant on grounds of practicality. It did not dispense with the need for probable cause."
An example of probable cause may be found in the case of Campbell v. United States, 110 U.S. App. D.C. 109, 289 F.2d 775 (D.C. Cir. 1961). The operator of an automobile started to drive away without putting his lights on and was stopped by police officers. When the driver alighted from the car to show his registration card to the officers, the dome light in the car disclosed articles in the automobile which had been reported stolen from another automobile in the same area. The defendants gave no adequate explanation of how they acquired the articles. The court said:
"These circumstances called for prompt police action before the occupants of the car had opportunity to escape or to dispose of the articles. The officers accordingly took the men and the articles to the precinct station for further identification and investigation. Probable cause for the arrest having been found, it was sufficient to support the search and seizure of the reportedly stolen articles."
In Silver v. State, 110 Tex. Cr. R. 512, 8 S.W.2d 144, 9 S.W.2d 358, 60 A.L.R. 290 (Tex. Crim. App. 1928) *508 the court held that the police officer acted with probable cause and did not require a warrant to search defendant's automobile. This officer heard information broadcast over the radio as to the commission of a crime, armed robbery. At the time this information was given, a description of the offenders was furnished. The defendant's car was searched and satchels containing the money, taken as a result of the armed robbery, were discovered. The court held that there was sufficient probable cause to search defendant's automobile without a warrant when the officer discovered that the defendants were the persons answering the description of the criminals.
The ease and practicability of obtaining a warrant of arrest or to search was the rule set forth in Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). Two years later, this rule was abandoned in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). The test of reasonableness of the search was substituted for the practicability of procuring a search warrant. However, the recent case of Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), may be evidence of the court's intention to revert to the spirit of the Trupiano rule. See concurring opinion by Mr. Justice Frankfurter, at page 618, 81 S.Ct., at page 780.
Concededly, the search of defendant Valentin's automobile was based upon the police officer's suspicion. From the record it appears that the defendant's actions which aroused the suspicion were more imaginary than real.
In Clay v. United States, 239 F.2d 196 (5 Cir. 1956), the court held that the mere act of a known gambler's driving an automobile on a public highway will not justify an officer's forcing him to stop to be searched without a warrant or arrested for suspected violations of the Federal Wagering Tax Act. The court, at page 202, observed that "all that protects the citizen from unwarranted intrusion is the expectation that an officer, zealous and energetic as *509 he may be, will nonetheless feel restrained by law * * *." The following poignant language of the court bears quoting (at pp. 200-201):
"If officers have the right to interfere with that essential pursuit of a nation of automobilists, it must be based on what is known or reasonably believed before the commandeering starts. To allow justification to rest on discovery after intrusion would permit `the Government * * * to justify the arrest by the search and at the same time to justify the search by the arrest.' Johnson v. United States, 333 U.S. 10, 16, 68 S.Ct. 367, 370, 92 L.Ed. 436, 442. United States v. Frisch, 5 Cir., 140 F.2d 660, 662." (Emphasis supplied)
Considering all the circumstances of the case, the court concludes that the search was unreasonable, and in violation of the Fourth Amendment of the United States Constitution and of Article I, paragraph 7, of the New Jersey Constitution.
An order to suppress the evidence obtained as a result of the search and seizure may be submitted.