85 N.J. Super. 391 (1964)
204 A.2d 888
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALEXANDER MURPHY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 10, 1964.
Decided November 16, 1964.
*394 Before Judges LEONARD, CONKLIN and PASHMAN.
Mr. Ralph M. Lowenbach argued the cause for appellant (Messrs. Hannoch, Weisman, Myers, Stern & Besser, attorneys).
Mr. Peter Murray, Assistant County Prosecutor, argued the cause for the State (Mr. Brendan T. Byrne, County Prosecutor, attorney).
The opinion of the court was delivered by PASHMAN, J.S.C. (temporarily assigned).
Defendant urges three grounds for reversal of his conviction, by the Essex County Court sitting without a jury, of a violation of N.J.S. 2A:119-2 (stealing personal property of a value less than $200). First, he contends that the evidence used to convict him was obtained through an unlawful and unconstitutional search and seizure. Secondly, he argues for reversal because of several alleged trial errors affecting his substantial rights. No objection was made at the trial to these alleged errors; defendant asks this court to consider them as "plain errors." See R.R. 1:5-1 made applicable to this court by R.R. 2:5. Finally, defendant alleges that his constitutional rights were violated because the trial judge commented that he took into consideration the fact that neither defendant nor a codefendant testified and that he must assume they were unable to deny the inculpatory testimony adduced against them.
*395 Defendant was found guilty on three of four indictments for shoplifting from various stores in Essex County. On October 5, 1961 defendant and two other men, Peter McLaughlin and Frank Scerbo, entered a radio and television store in Caldwell. Scerbo inquired about a refrigerator while the other two browsed. The store manager became suspicious and telephoned a friend to ask if these were the three men who had been in the friend's store. After presumably receiving an affirmative answer, the manager then asked his friend to call the police. The three men left shortly thereafter. After they had left, the manager noticed that a radio was missing from a shelf. He then called the police and told a Sergeant Sullivan that "there definitely was a radio missing."
Meanwhile, Officer Cosgrove was dispatched to the store, having been told that three men were suspected of shoplifting. When he arrived the officer stopped defendant, McLaughlin and Scerbo as they were pulling away in a white Cadillac. Detective Sergeant Penkowski had also been told to proceed to the television store because there were three shoplifters on the premises. En route he received a second call from Sergeant Sullivan. The totality of the testimony shows that while on his way to the store Sergeant Penkowski was told that a radio was missing. When Sergeant Penkowski arrived, Officer Cosgrove was checking McLaughlin's driver's license and registration. Sergeant Penkowski looked in the back window of the car and saw a white radio on the floor and a tan briefcase with a radio protruding from it. He took the radio from the briefcase and someone at the television store identified it as the missing radio.
The three men were taken to headquarters and the car was searched. A tape recorder, an adding machine and other radios were found in the trunk of the car. The adding machine was identified as one taken from a third store. There was positive identification that defendant, Scerbo and McLaughlin were present in these two stores on the day they were arrested. McLaughlin admitted stealing the items but *396 said the defendant Murphy and Scerbo had no part in the thefts.
The prosecutor contends that defendant's failure to move to suppress the evidence within 30 days after the initial plea was entered constitutes a waiver of any right to object to the admissibility of evidence on the grounds of unlawful search and seizure. This is the substance of R.R. 3:2A-6(a). The rule also provides that the 30-day provision may be enlarged for good cause shown. Further,
"* * * The motion shall be determined before trial. A motion may be entertained at trial only if the court finds the defendant could not reasonably have made the motion prior to the trial."
Defendant says that he did not move to suppress prior to trial because Scerbo had made a similar motion which was denied. This reason is frivolous and does not constitute "good cause." The failure of defendant to move, prior to trial, to suppress the evidence constituted a waiver of any objection to the admission of the evidence. See State v. Ferraro, 81 N.J. Super. 213 (Cty. Ct. 1963).
But even assuming that there was no waiver, the proofs clearly show that the evidence was not unlawfully seized. A search and seizure without a search warrant may be conducted as an incident to a lawful arrest. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); State v. Doyle, 42 N.J. 334 (1964); State v. Smith, 37 N.J. 481 (1962), certiorari denied 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1962); State v. Griffin, 84 N.J. Super. 508 (App. Div. 1964).
Defendant contends that there were insufficient grounds for the arrest. He further contends that the crime he was charged with was a misdemeanor, thereby precluding his arrest without a warrant unless the crime was committed in the presence of a police officer. The latter argument was rejected in State v. Doyle, supra, where the court said:
"Misdemeanors under the crimes act which are punishable by imprisonment for more than a year in state prison, in our judgment, *397 and we so hold, are sufficiently equatable with common law felony to justify arrest by a peace officer without a warrant when he has reasonable ground to believe that an offense of that grade is being or has been committed by the person to be apprehended. See State v. Smith, supra (37 N.J., at p. 494). * * *" (at p. 349)
The essential inquiry is whether there was probable cause for the arrest. Probable cause is said to exist if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. Henry v. United States, supra; State v. Smith, supra; State v. Valentin, 74 N.J. Super. 502 (Law Div. 1962). Defendant lays great stress upon the alleged fact that the phone call to the police was made by a friend of the manager of the television store. Defendant contends that based solely upon this suspicion Officer Cosgrove stopped defendant and his companions. It is true that mere suspicion will not sustain a search and seizure without a warrant. State v. Taylor, 81 N.J. Super. 296 (App. Div. 1963); State v. Scanlon, 84 N.J. Super. 427 (App. Div. 1964); State v. Valentin, supra. But the above facts were not the only ones which prompted the police to act. While Officer Cosgrove was checking the driver's identification, Mr. Eastlake, the service manager of the television store, phoned the police and told them that there definitely was a radio missing. This information was relayed to Officer Penkowski while en route to the scene. When Penkowski arrived he saw radios in the car. The court must conclude that based upon the information received by the police, there was probable cause to arrest defendant and his companions without a warrant. Since the search was incident to a valid arrest, it too was valid. But it should be noted that it is not even a search to observe that which is open and patent in either sunlight or artificial light. State v. Scanlon, supra.
The second alleged ground for reversal of the conviction is that the cumulative effect of trial errors deprived the defendant of a fair trial. Defendant urges that these errors affected his substantial rights requiring a new trial. See R.R. 1:5-1 and R.R. 2:5.
*398 The first trial error alleged by defendant concerned the testimony of one Steven Macanga, the store manager of Bloomfield Appliance Co. He testified that defendant had been in his store on the day of the arrest and that a clock radio was subsequently missing. This testimony was stricken because there was no indictment charging a crime at the Bloomfield Appliance Co. Defendant says that this testimony must have added weight to the circumstantial evidence which formed the basis of the State's case. We do not consider this contention meritorious. In commenting about the ability of a judge to screen out irrelevant or immaterial evidence our Supreme Court observed in State v. Sullivan, 24 N.J. 18, 36 (1957), certiorari denied 355 U.S. 840, 78 S.Ct. 52, 2 L.Ed.2d 51 (1957), that:
"* * * By virtue of tradition, training and responsibility, the average judge is less likely to be swayed from objectivity through passion or the mere eloquence of counsel. From daily experience, he acquires a certain immunity to lawyers' emotional perorations and inevitably turns to the evidence as his ultimate guide."
In this case, it was the judge himself who noted that there was no indictment.
The second alleged trial error was that two photographs of the stolen goods were admitted as State's exhibits without a proper foundation, because the identifying marks, i.e., serial numbers, were not visible when the photographs were taken. We hold that there was no error in admitting the photographs. Sergeant Penkowski testified that the photographs represented articles taken from the car and that he directed the pictures to be taken. This constituted a sufficient foundation for the admission of the pictures. See State v. Fiore, 94 N.J.L. 477 (E. & A. 1920). Further, upon cross-examination, McLaughlin who was testifying for defendant, admitted that the items were stolen from the stores.
Defendant also alleges that one of the photographs depicted items not mentioned in the indictment. In order for such evidence to be considered reversible error there must be *399 proof that its admission was prejudicial to the defendant. State v. Hintenberger, 41 N.J. Super. 597 (App. Div. 1956); certification denied 23 N.J. 57 (1956); State v. Dietz, 5 N.J. Super. 222 (App. Div. 1949). No prejudice has been shown. As stated previously, the trial judge properly disregarded this evidence.
A further ground for reversal urged by defendant is that the admission of the photographs violated the best evidence rule because the articles contained identifying marks and should have been physically brought into court. Although the best evidence rule is usually applied to writings, it may be applied where chattels can only be identified through the use of identifying marks or numbers. See 4 Wigmore, Evidence, §§ 1179, 1182 (3d ed. 1940). No such inability to identify the articles was present here. Sergeant Penkowski's identification of the articles shown in the photographs which he had directed to be taken was clear and explicit. The serial numbers and tags were not important or necessary to his recognition.
In view of the recent United States Supreme Court case of Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), defendant raised an additional ground for reversal just prior to oral argument. In Malloy the court held that the Fifth Amendment's exception from compulsory self-incrimination is protected by the Fourteenth Amendment against abridgement by the states. The Supreme Court of the United States clearly enunciated the rule that a person has a right to remain silent unless he chooses to speak in the unfettered exercise of his own will. And most important, he is to suffer no penalty for such silence. 378 U.S., at pp. 6, 7, 84 S.Ct., at pp. 1493-94, 12 L.Ed.2d, at p. 659.
Malloy involved a witness who invoked the Fifth Amendment in a state gambling inquiry. Under federal statutory law the failure of a defendant in a criminal case to take the witness stand "shall not create any presumption against him." 18 U.S.C.A. § 3481; United States v. Agueci, 310 F.2d 817 (2 Cir. 1962), certiorari denied 372 *400 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963). Generally, a federal judge cannot instruct the jury that an unfavorable inference may be drawn because of a defendant's failure to take the witness stand. United States v. Agueci, supra; United States v. Ragland, 306 F.2d 732 (4 Cir. 1962), certiorari denied 371 U.S. 949, 83 S.Ct. 504, 9 L.Ed.2d 498 (1963); Moore v. United States, 271 F.2d 564 (4 Cir. 1959). There is also authority, albeit not clear-cut, that the prohibition against such an inference is grounded in the Federal Constitution as well as in the federal statute and would apply to an adverse comment by a judge on a defendant's failure to testify. See United States v. Agueci, supra, 310 F.2d, at pages 830-31; United States v. Ragland, supra, 306 F.2d, at page 736; 8 Wigmore, Evidence (McNaughton rev. 1961), § 2252.[1] However, running through many of these same cases is the rule that if the Government's case is of such a nature as to warrant an inference of guilt, the general rule does not prevent the jury from considering the lack of contradiction on the part of witnesses for the defense. But the jury cannot take it for granted that a defendant is guilty because he did not testify. To state the rule another way, the failure of a defendant in a criminal case to explain highly suspicious circumstances does not have to be entirely disregarded by the trier of facts. United States v. Ragland, supra; Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); Moore v. United States, supra; Jenkins v. United States, 58 F.2d 556 (4 Cir. 1932), certiorari denied 287 U.S. 622, 53 S.Ct. 21, 77 L.Ed. 540 (1932). Admittedly, there *401 is a thin line separating proper and improper comment by a judge. In the present case the trial judge stated he must "take into consideration also the fact that neither defendant nor Frank Scerbo have testified in this case, and I must assume, therefore, that they are unable to deny the inculpatory testimony which has been adduced here at the trial against them." While this statement contains neither the word "presumption" nor "inference," it has substantially the same meaning as the instruction criticized by Justice Francis in State v. Corby, 28 N.J. 106 (1958), at p. 117. Under the rule laid down in Corby, only an inference (not a presumption, or assumption as in this case) should be drawn, and the inference is that the accused could not truthfully deny the inculpatory facts (not testimony) adduced against him.
The precise limits of Malloy v. Hogan, supra, will undoubtedly be further clarified by later cases. At this posture of events, however, and considering the exact findings of the trial judge in his determination of guilt, we believe that the broad language in the Malloy case means that such adverse comment by a state trial judge on a defendant's failure to testify is invalid under the Fifth and Fourteenth Amendments to the United States Constitution. To allow such an inference would cause a defendant to suffer a penalty. Even assuming that some comment was allowable under what might be called the "highly suspicious circumstances" rule, we believe that the statement made by the trial judge constituted error because based on defendant's failure to testify, the trial judge assumed defendant's inability to deny the inculpatory testimony against him.
The trial was conducted and the judge's statement made prior to the decision in Malloy v. Hogan, supra. Therefore this court must decide whether the Malloy decision is retrospective in application when an appeal is pending. Of course, the question has not yet been decided. Perhaps the closest recent analogy is Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), rehearing denied, 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961), where the *402 court held that the Federal Constitution barred the use by a state of evidence seized as the result of an illegal search and seizure. Our Supreme Court in State v. Smith, supra, held that Mapp applied to cases then pending or on appeal. The general rule in civil cases is that a change in law by judicial decision is retrospective in nature and makes the law as it is declared in the last decision applicable to all transactions that can be reached by it. Fox v. Snow, 6 N.J. 12, 14 (1950). Such retrospective operation of a decision in civil cases "does not reach transactions where contract or property rights have vested or where extreme hardship would result." Johnson v. State, 18 N.J. 422, 429 (1955), certiorari denied 350 U.S. 942, 76 S.Ct. 318, 100 L.Ed. 822 (1956); Ross v. Freeholders of Hudson, 90 N.J.L. 522 (E. & A. 1917).
But what about a criminal case where constitutional rights are at stake? There is a conflict of authority because of the rule that a court has a general inherent power to decide whether a decision is to be retrospective or prospective. Great Northern Ry. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932); Durham v. United States, 94 U.S. App. D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430 (D.C. Cir. 1954). However, where constitutional rights are involved, should not a court consider the alleged transgression of these rights in all pending cases? We believe it should. The floodgates should not be opened to review any and all dispositions. See State v. Smith, 43 N.J. 67, 78-79 (1964). But matters now before the courts should be evaluated in the light of present law. A criminal defendant should not be penalized because of the fortuitous circumstance of the time when he allegedly committed a crime. Our constitutional safeguards should not be so tenuous. The Supreme Court has cast the constitutional die for the future in several recent cases. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Mapp v. Ohio, supra. The logical extension of the rationale of recent decisions interpreting Bill of Rights freedoms dictates that *403 they are to be applied retrospectively where appeals are then pending. See State v. Smith, supra, 37 N.J. 481; State v. Valentin, 36 N.J. 41 (1961); People v. Loria, 10 N.Y.2d 368, 223 N.Y.S.2d 462, 179 N.E.2d 478 (Ct. App. 1961); United States v. Walker, 323 F.2d 11 (5 Cir. 1963), certiorari denied 377 U.S. 930, 84 S.Ct. 1340, 12 L.Ed.2d 295 (1964). The factors which should be considered by a court in determining whether retrospective effect should be given to the overruling of a constitutional principle are: (1) to identify the purpose of the new rule, (2) to determine whether on balance those purposes will be served by general retrospective application of the new rule, and (3) to decide whether these purposes will be promoted by retrospective application of the new rule in the particular case before it. United States v. Walker, supra, 323 F.2d, at p. 17. See Note, "Prospective Overruling and Retroactive Application in the Federal Courts," 71 Yale L.J. 907, 942 (1962), where the rule was first suggested. See also Note, 16 Rutgers L. Rev. 587 (1962), and the test suggested there at page 592. The obvious purpose of the rule outweighs any possible harm to society or the efficient administration of justice. A possibility of a larger number of appeals should not deter courts from hearing alleged errors so basic to individual liberty.
As has been aptly and succinctly stated by Chief Justice Weintraub in State v. Smith, supra, 37 N.J., at p. 484:
"Concepts of justice change. Doctrines, incomprehensible today, were once embraced by judges who in their times were doubtless the epitome of the reasonable man. Surely this is so in long-range retrospect. It is equally true that at the moment of change the choice is not necessarily between dead right and dead wrong. The judicial scene is studded with issues upon which conflicting views command respectable support. When a court alters its course, it is often but a preference, a belief that justice is better served in another way, with no intimation that whoever disagrees must be mean or inane."
Defendant Murphy was tried on May 7 and convicted on May 8, 1963. On that date the Fifth Amendment was regarded as inapplicable to state court proceedings. The inference *404 drawn was permissible under accepted constitutional doctrines on the date of trial. On June 15, 1964 the Supreme Court reversed itself in this respect. The trial judge, therefore, did not have Malloy, supra, to guide him at the trial. Defendant, however, whose fate is still awaiting determination by the judicial process, should not be denied the constitutional protection Malloy seeks to extend.
We believe defendant was deprived of his constitutional rights under the Fifth and Fourteenth Amendments. For the reasons set forth, the judgment of conviction is reversed and the cause is remanded for a new trial.
NOTES
[1] In Malloy, Mr. Justice Brennan, speaking for a majority of the court, cited Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97, and Adamson v. California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903, and then stated in a footnote:

"In both cases the question was whether comment upon the failure of an accused to take the stand in his own defense in a state prosecution violated the privilege. It was assumed, but not decided, in both cases that such comment in a federal prosecution for a federal offense would infringe the provision of the Fifth Amendment that `[n]o person * * * shall be compelled in any criminal case to be a witness against himself.'"