131 N.J. Super. 558 (1974)
330 A.2d 640
JOHN F. INGANAMORT, MICHAEL J. INGANAMORT, LA SALLE CONTRACTING CORP., A JOINT VENTURE TRADING AS MEDITERRANEAN TOWERS, ALEXANDER SUMMER, TRUSTEE UNDER LINWOOD BUILDINGS NO. 1 THROUGH 13, ROBERT SLATER AND BRUCE SLATER, A PARTNERSHIP TRADING AS SLATER ASSOCIATES, HARRY B. HELMSLEY AND ALVIN SCHWARTZ, GENERAL PARTNERS OF A LIMITED PARTNERSHIP TRADING AS HORIZON HOUSE ASSOCIATES, AND FORT LEE TAXPAYERS AND PROPERTY OWNERS' COMMITTEE, PLAINTIFFS,
v.
BOROUGH OF FORT LEE, MAYOR AND COUNCIL OF BOROUGH OF FORT LEE AND RENT LEVELING BOARD OF THE BOROUGH OF FORT LEE, DEFENDANTS. HELMSLEY-SPEAR, INC., MANAGING AGENT FOR HORIZON HOUSE ASSOCIATES, PLAINTIFF,
v.
RENT LEVELING BOARD OF THE BOROUGH OF FORT LEE, MAYOR AND COUNCIL OF THE BOROUGH OF FORT LEE, BOROUGH OF FORT LEE, JACK ADLER, ROGER HILTON, TERRY PARKER AND FRIDA PARKER, HIS WIFE, EDWARD S. ZORN, LEW RASKIN, DAVID ROSS, ARTHUR BAUM AND ROSE HENRI BAUM, HIS WIFE, DEFENDANTS. HELMSLEY-SPEAR, INC., MANAGING AGENT FOR HORIZON HOUSE ASSOCIATES, PLAINTIFF,
v.
RENT LEVELING BOARD OF THE BOROUGH OF FORT LEE, MAYOR AND COUNCIL OF THE BOROUGH OF FORT LEE, BOROUGH OF FORT LEE, LEONARD RUSKIEWICZ, MARTIN SILVERSTEIN, MARCO CANNALONGA, GILBERT WYLAND AND MARY WYLAND, HIS WIFE, MARTIN ROFFMAN, GERALD BUXBAUM, MILTON WASSERBERGER & BLANCHE WASSERBERGER, HIS WIFE, CHARLES GEIER, FRANK VOGEL, FREDA MESSINGER & LEONIA JONES, DEFENDANTS. HELMSLEY-SPEAR, INC., MANAGING AGENT FOR HORIZON HOUSE ASSOCIATES, PLAINTIFF,
v.
RENT LEVELING BOARD OF THE BOROUGH OF FORT LEE, MAYOR AND COUNCIL OF THE BOROUGH OF FORT LEE, BOROUGH OF FORT LEE, DAVID B. GOLDSTEIN, MOLLIE NUSSBAUM, MICHAEL DE MASI, THOMAS FLANAGAN & MAY FLANAGAN, HIS WIFE, WILLIAM BRONSON, ELLEN B. ROBB, JOSEPH WEISSMAN, HAROLD ZIMMERMAN & MYRNA ZIMMERMAN, HIS WIFE, AND MURRAY SCHWARTZ, DEFENDANTS. ALEXANDER SUMMER, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
RENT LEVELING BOARD OF THE BOROUGH OF FORT LEE, MAYOR AND COUNCIL OF THE BOROUGH OF FORT LEE, BOROUGH OF FORT LEE AND ROBERT HEINER, DEFENDANTS. JOHN F. INGANAMORT, MICHAEL J. INGANAMORT, LA SALLE CONTRACTING CORP., A JOINT VENTURE t/a MEDITERRANEAN TOWERS, HARRY B. HELMSLEY AND ALVIN SCHWARTZ, GENERAL PARTNERS OF A LIMITED PARTNERSHIP t/a HORIZON HOUSE ASSOCIATES, R.R.H. & ASSOCIATES, A PARTNERSHIP t/a CARRIAGE HOUSE, SLATER ASSOCIATES, A CORPORATION OF THE STATE OF NEW JERSEY, t/a PRESIDENTIAL APARTMENTS, CENTER AVE. REALTY INC., A CORPORATION OF THE STATE OF NEW JERSEY, t/a CRYSTAL HOUSE, PEMBROKE DEVELOPERS, A PARTNERSHIP t/a PEMBROKE OF FORT LEE, GEORGE ROTHMAN, IRA GROSSMAN, HELENA CANTOR, SANDRA FEINMAN, AND KAREN WAXBERG t/a REGENCY TOWER, A PARTNERSHIP, CHARLES LUPPINO AND ROSARIO LUPPINO, A PARTNERSHIP, t/a HAMPSHIRE HOUSE, TAMBURELLI PROPERTIES, INC., A CORPORATION OF THE STATE OF NEW JERSEY t/a BELLA VISTA APARTMENTS, NEW JERSEY REALTY COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY t/a PALISADE GARDENS APARTMENTS, AMERICANA ASSOCIATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY t/a COLONY HOUSE APARTMENTS, WINCHESTER ASSOCIATES, TERRACE ASSOCIATES, WHITE MANOR ASSOCIATES, AND DEARVILLE TOWERS, LIMITED PARTNERSHIP OF THE STATE OF NEW JERSEY, RIVERVIEW REALTY CO., A PARTNERSHIP OF THE STATE OF NEW JERSEY t/a RIVERVIEW TOWERS APARTMENTS, PLAINTIFFS,
v.
THE BOROUGH OF FORT LEE, A MUNICIPAL AND BODY POLITIC OF THE STATE OF NEW JERSEY, MAYOR AND COUNCIL OF THE BOROUGH OF FORT LEE AND RENT LEVELING BOARD OF THE BOROUGH OF FORT LEE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 18, 1974.
*562 Mr. Richard F. Aronsohn for plaintiffs John F. Inganamort, et als (Messrs. Aronsohn, Kahn & Springstead, attorneys).
Mr. Francis B. Rusch for plaintiffs Helmsley-Spear, Inc. and Alexander Summer, Inc.
Mr. Armand Pohan for defendants Borough of Fort Lee and Mayor and Council of Borough of Fort Lee (Messrs. McCarter & English, attorneys).
*563 Mr. Robert Fuchs for defendant Rent Leveling Board of the Borough of Fort Lee (Messrs. Fuchs & Altschul, attorneys).
SMITH, HARVEY, J.C.C., Temporarily Assigned.
This is a consolidation of six separate actions instituted by numerous owners of multi-family residences seeking to invalidate Fort Lee Rent Levelling Ordinance 74-26 and to overturn the actions of the Fort Lee Rent Levelling Board.
The ordinance in question purported to amend Ordinance 72-1 by limiting the landlord's maximum allowable rent increase per year to 2 1/2% of the previous 12 month rent charged for the premises. We must therefore explore the legislative history of Fort Lee rent levelling in light of recent case law.
Ordinance 72-1 was enacted on February 2, 1972. Rent gouging in multi-family dwellings had been found to so disturb the housing market that the Borough exercised its delegated police power to protect its citizens. As initially proposed, Section 20 provided for a three year term but before final enactment the viable life span was reduced to one year without proper public notice. The same section provided that termination was to be automatic "... unless specifically extended by the Governing Body by Resolution...". Because previously rent levelling had been solely within the State's ambit, this ordinance was the subject of court ordered restraints from its inception. The restraints were not lifted until the New Jersey Supreme Court found rent levelling delegable by the State and within the purview of municipal police power. Inganamort v. Fort Lee, 62 N.J. 521 (1973).
Prior to expiration of and pursuant to the terms of Ordinance 72-1, the Fort Lee governing body passed a resolution on January 17, 1973 stating that the emergency still existed, necessitating the continuance of rent levelling for another year. On May 15, 1974 the Borough recognized *564 a need to further restrict rent increases and enacted Ordinance 74-26 which is the subject of the litigation herein.
At about this time, companion Hudson County rent levelling cases were decided. Albigese v. Jersey City, 127 N.J. Super. 101 (Law Div. 1974); Woodcliff Managament v. Tp. of North Bergen, 127 N.J. Super. 123 (Law Div. 1974). In Albigese, supra, the court held that a windfall rise in rents during a non-controlled period could be subject to retroactive municipal control by legislation creating a base period from which increases would be calculated. Id., 127 N.J. Super. at 114. The same court held that such strictures could only be applied prospectively on landlord-tenant contracts in force prior to enactment and that no retroactive rebates from landlords to tenants could be exacted. Woodcliff Management, supra.
Thereafter landlords appealed the Albigese decision challenging the procedural validity of extension of an ordinance by means of resolution. It was held that extension of legislative matters, as opposed to administrative or procedural matters, could only be effected by ordinance. An extension by resolution was invalid. Albigese v. Jersey City, 129 N.J. Super. 567 (App. Div. 1974).
Section 20 of Fort Lee Ordinance 72-1 provided for extension by resolution. Construed in terms of the holdings outlined, the ordinance ceased to exist after February 2, 1973. Ordinance 74-26 cannot be said to have incorporated an invalid ordinance by reference. Standing alone, this later enactment was deficient because it stated no legislative purpose, set no time limit nor did it set out the rights, duties and liabilities of landlords and tenants pursuant to the enactment. Fort Lee was therefore free from rent levelling control until at least November 6, 1974 when a new ordinance was enacted. No opinion is here offered as to the validity of the November 6, 1974 enactment. The question remains as to what rights and liabilities accrued to landlords and tenants during this 23 month interstices.
*565 The right of a landlord to freely contract with a tenant falls within the protection accorded private property by the United States and New Jersey Constitutions. U.S. Const., Amend. V; N.J. Const. Art. 1, ¶ 1. But valid legislation enacted pursuant to the governmental unit's police power for the benefit of the general public would suffice to force that private interest to yield. 5 McQuillin, Municipal Corporations (3d ed. 1969) § 19.37, pp. 493-497. Therefore until February 2, 1973 landlords could only contract with tenants for rent increments equal to the Consumer Price Index formula outlined in Sections 2, 3 and 4 of Ordinance 72-1.
The N.J. Const., Art. 4, § 7, ¶ 5 provides that
No law shall be revived or amended by reference to its title only, but the act revived, or the section or sections amended, shall be inserted at length. No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of the act or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act.
Municipalities are bound by the Constitution and general laws of the State. After February 2, 1973 no valid rent levelling law existed in Fort Lee. The resolution of January 1973 was an invalid attempt to extend the ordinance. Albigese, 129 N.J. Super. 567, supra. The May 15, 1974 amendment merely made reference to the expired Ordinance 72-1 without setting out its provisions at length. "Without question, where an ordinance is void, a subsequent ordinance, that cannot be enforced of itself, and that purports to amend a single section of the prior ordinance, is invalid." 6 McQuillin, Municipal Corporation (3d ed. 1969) § 21.05, p. 201. Furthermore even if a rent levelling ordinance were properly enacted on May 15, 1974 it would not have served to revive the original ordinance for the 13 previous months.
Statutes are presumed to operate prospectively only unless express words in the enactment show legislative intent for retroactive effect. Even with express retroactive *566 indication, such legislation will not be given effect if express constitutional provisions are abridged. W. Schaefer, "The Control of `Sunbursts', Techniques of Prospective Overruling," 42 NYU L. Rev. 631 (1967); Scurlock, "Retroactive Legislation Affecting Interests in Land", U. of Mich. L. Rev. 1, 6 (1953); 82 C.J.S. Statutes § 414, p. 981.
Decisions overruling previous law and their effect on previous transactions are strictly within the state's inherent power. Justice Cardozo surveyed the states' positions on the effect of such overruling holding in Gr. Northern RR v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). He asserted that there is authority that state courts must give such decisions prospective effect only but there is no doubt that they may so treat decisions. Id. at 364-365, 53 S.Ct. at 148-149. On the other hand, courts may treat overruled cases and/or statutes as if they had never been and thus give the new decision retroactive effect. Id.; 21 C.J.S. Courts § 194, p. 326.
Where fundamental constitutional rights are affected by an overruling decision pertaining to criminal law, retroactive application of remedies afforded by the new decision frequently become available to defendants who have been convicted under the previous construction of the law. United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1970) (5th Amendment right to remain silent must be available to defendant in civil action same as in criminal action); Berger v. Cal., 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969) (state must make "good faith" effort to procure witness' appearance at trial for cross examination purposes before preliminary hearing testimony of said witness is available to prosecution at trial); Arsenault v. Mass., 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968) (right to counsel at trial and other "critical stages" of the criminal proceedings). New Jersey has also applied criminal holdings retroactively. State v. Smith, 37 N.J. 481 (1962), (criminal prosecution in which Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, *567 6 L.Ed.2d 1081 (1961), was applied retroactively and distinguished); State v. Valentin, 36 N.J. 41 (1961) (criminal conviction remanded for retroactive application of Mapp v. Ohio, supra); State v. Murphy, 85 N.J. Super. 391 (App. Div. 1964) (criminal prosecution set aside based on retroactive application of Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)).
"The general rule concerning civil cases [in N.J.] is that a change in law by judicial decision is retrospective in nature..." State v. Murphy, 85 N.J. Super. 391, 402 (App. Div. 1964); Arrow Builders Supply Corp. v. Hudson Terrace Apts., 16 N.J. 47 (1954); Fox v. Snow, 6 N.J. 12 (1950); Miller v. McCutcheon, 115 N.J. Eq. 459 (Prerogative Court 1934); Goldberg v. Traver, 52 N.J. 344, 347 (1968). Whether or not the overruling decision will so operate is largely a matter of judicial discretion. State v. Vigliano, 50 N.J. 51, 65 (1967). The only limiting factor would be whether or not retroaction would disturb vested contract or property rights. Comment, "The Effect of Overruled and Overruling Decisions or Intervening Transactions", 47 Harv. L. Rev. 1403, 1404 (1934); 82 C.J.S. Statutes § 416, p. 992.
Tenants, in the case herein, may assert that their contract with the landlord for this 23 month period at rates governed by a now invalid statute may not be altered because rights thereunder have vested and are constitutionally protected from impairment. But there
can be no protectible contract based on a proviso contained in a void statute. Also, a contract based on an unconstitutional statute is not within the purview of the impairment of obligation clause. The Federal Constitution does not protect contracts which are invalid or illegal as, for example, a grant of privileges in excess of a city's power ... 11 Am. Jur., Const. Law, § 388, p. 170.
The contracts between landlord and tenant were not entered voluntarily and with equal consideration. The landlord was compelled to adhere to rates which had apparent legislative validity. Penalties for landlord's failure to *568 comply were incorporated within Section 17 of the ordinance. There was no acquiescence in the contractual rate entered because no possibility existed at that juncture of the landlord acting other than in compliance with statute and case law. Miller v. McCutcheon, supra, 115 N.J. Eq. at 464; Lutz v. Goldberg, 7 N.J. Super. 288, 292 (App. Div. 1950). In Miller, taxes paid under a law subsequently held invalid were refunded to the taxpayer. Retroactive effect was found essential because it would be "... `intolerable' that the state should collect and retain a tax which, as has been definitely and conclusively determined, it has no right whatever to collect ..." Id. at 464.
A similar line of reasoning was extended to the field of rent control in New Jersey during the time of federal regulation. A landlord had contracted with a tenant for $86.75 per month. Thereafter rent control went into effect and the Area Director reduced the rate to $77.50. An appeal was taken to Washington and the higher rate was reinstated but four months had elapsed during which the lower rate had been paid by the tenant. The Appellate Division held that the landlord could collect the difference in rates for the four month period because [t]he Act ... does not create an agreement between the parties ... [and] substituted performance where there has been a payment and acceptance of a lower rent, cannot deprive the landlord of his right to recover the balance due." Lutz v. Goldberg, supra at 292. Likewise, any contracts entered during the period when no valid rent controls existed in Fort Lee cannot be considered obligations freely entered for purposes of vesting rights in the tenants which would now deprive landlords of their right to either a higher rental as stated in the contract or the fair market value of such units at that time, whichever is lesser.
The Borough of Fort Lee seeks to invoke the severance clause of Ordinance 72-1 to excise the ordinance's one year life span. It would then rely on the general purpose clause of said enactment to give continued life to rent levelling *569 from the enactment date of Ordinance 72-1 until the stated emergency would cease to exist. There are several infirmities attendant to that interpretation.
... [A] saving clause is in aid of interpretation merely, and is not an inexorable command ... It does not do more than turn a presumption of inseparability into one of separability. (cites omitted) Rutgers Chapter, etc. v. New Brunswick, 129 N.J.L. 238, 245 (Sup. Ct. 1942).
The courts should apply the doctrine of separability cautiously in order to preclude usurpation of legislative functions. Heckel, "Constitutional Law", 4 Rut. L. Rev. 42 (1949-50). "It is not enough that the act be severable in fact; its severability in the event of partial invalidity must also have been within the legislative intention." State v. Doto, 10 N.J. 318 (1952).
When the Fort Lee Borough Council proposed rent levelling legislation, it was offered to cure a public emergency. The town fathers knew they were in for a fight with landlords and would have to overcome the constitutional question of state presumption in this field. Presumably, to more comport with the limited nature of an emergency, the Borough Council felt a one year duration would be more certain of judicial confirmation than a three year period. Although procedurally deficient, this reduction in time was vigorously supported by the Borough at trial and was eventually sustained by the New Jersey Supreme Court. Inganamort v. Ft. Lee, 120 N.J. Super. 286 (Law Div. 1972), aff'd. 62 N.J. 521 (1973). The Borough thereby relied on the time element stated within Ordinance 72-1 as an essential and integral part of the enactment. The one year limitation must have been an inducement to the ordinance's promulgation or else the Borough would not have taken last minute steps to supercede the three year duration originally incorporated, which had been properly introduced and been subject to public hearings. Therefore, were the one year clause severed, the entire act would still not be viable because
*570 [a]n act may fall in its entirety if the invalid elements constituted an inducement for the passage of the law, even though not the sole inducement. Even where a severability clause has reversed the presumption of an intent that unless the act operates as an entirety it shall be wholly ineffective, the void provision may "so affect the dominant aim of the whole statute as to carry it down with them". (cites omitted) State v. Doto, supra, 10 N.J. at 319; N.J. Chapt., Am. I.P. v. N.J. State Bd. of Prof. Planners, 48 N.J. 581, 594 (1967).
Additionally, the placement of the particular proviso, time clause, at the very end of the enactment has more weight than the general emergency proviso, which might be contradictory thereto, and under which the Borough would now have the ordinance deemed efficacious. "The particular intent expressed in a proviso or exception will restrain the general language of the enactment." Rutgers Chapter, supra, 129 N.J.L. at 243.
The one year limit was a constituent part of Ordinance 72-1. Public notice was given on the basis of a fixed time, and it was subsequently argued and upheld. Inganamort, supra. The Borough cannot now be heard to argue before the same forum that the time clause is severable and thereby indefinitely extend by judicial fiat that which was not enacted initially.
Fort Lee may exercise its police power prospectively to preclude a continued burden on their tenants from this interim recovery by the landlords through enactment of a new and valid rent levelling ordinance which would establish a rent base period at a time when valid controls did exist. Albigese, 127 N.J. Super. at 114, supra.
Ordinance 72-1 was the only valid rent levelling enactment Fort Lee has ever had. Its effectiveness covered the period from February 1972 to February 1973. Issues concerning actions of the Rent Levelling Board affecting leases during that one year period are not disposed of by this decision.
Summary judgment in accordance with this opinion is hereby granted in favor of plaintiffs.